UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
LORENZO LICOPOLI,

                    Plaintiff,

         -against-                                           **MEMORANDUM AND ORDER**

MINEOLA UNION FREE SCHOOL                                    Civil Action No. 09-3974
DISTRICT, LARAINE SALVATORE,                                 (DRH)(AKT)
individually and in her official capacity,
TERENCE HALE, individually and in
his official capacity, and WILLIAM
HORNBERGER, individually and in his
official capacity.

                    Defendants.
-------------------------------------------------------X

**APPEARANCES:**

**Leeds Morelli & Brown, P.C.**
Attorneys for Plaintiff
One Old Country Road, Suite 347
Carle Place, New York 11514
By:     Rick Ostrove, Esq.

**CRONIN & BYCZEK, LLP**
Attorneys for Defendants
1983 Marcus Avenue, Suite C-120
Lake Success, New York
By:     Linda M. Cronin, Esq.

**HURLEY, Senior District Judge:**

         Plaintiff Lorenzo Licopoli ("Plaintiff") commenced this action pursuant to 42 U.S.C. §

1983 asserting violations of his First and Fourteenth Amendment rights.   Presently before the

Court is defendants' motion to dismiss the complaint.   For the reasons set forth below, the

motion is granted.

## Background

The following allegations are taken from the complaint.

Since August 2001, Plaintiff has been the Superintendent of Schools for defendant Mineola Union Free School District (the "District"). Defendants Larraine Salvatore ("Salvatore"), Terence Hale ("Hale"), and William Hornberger ("Hornberger") are member of the District's Board of Education.

At a September 2008 public meeting of the Board of Education, Salvatore distributed a document which she claimed contained specific examples of Plaintiff's failure to carry out his duties but which Plaintiff asserts contained false and defamatory statements. Salvatore also distributed a written explanation of her evaluation of Plaintiff, which he also labels as false and defamatory. In October 2008, Plaintiff filed a defamation action against Salvatore in the Supreme Court of the State of New York, Nassau County based on the documents she distributed at the September board meeting.

At the January 2009 meeting of the District Board of Education a motion was made and seconded (by non-defendant member of the board) to approve a 3% merit raise (seemingly only for Plaintiff, although the complaint is unclear in that regard) for the 2008/09 school year. Pursuant to his contract with the District, Plaintiff is eligible to receive a merit increase of up to 3% of his previous year's salary based upon the achievement of goals mutually agreed upon by the Board of Education and Plaintiff. Prior to 2009, Plaintiff was offered a merit increase of 2% to 3% each year, except for one when the matter of his merit increase was "inadvertently excluded from the board meeting." Each year that he was offered the merit increase, Plaintiff declined the offer so that the money could be used by the School District for

the betterment of the District and its students. Prior to the vote on the increase at the January 2009 board meeting Plaintiff stated that he would again return the money to the District.

During the discussion of the merit increase resolution, none of the Board members argued that Plaintiff has failed to meet the goals agreed upon by him and the Board. In fact, the only discussion of his performance was by a non-defendant board member and was complementary. Hale, however, did indicate that he was angry that Plaintiff had sued Salvatore. The resolution was defeated with Salvatore, Hale, and Hornberger voting against it "despite [Plaintiff] meeting the goals agreed upon by him and the Board." According to the complaint, the vote against Plaintiff's merit increase was "motivated in whole or in substantial part to retaliate against Plaintiff for his filing of the [s]tate [court] [a]ction." It is also asserted that his contact gave him a vested property interest in the merit increase and thus was entitled to a pre-deprivation due process hearing which he did not receive.

## Discussion

### I.      Motion to Dismiss: Legal Standards

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

3

550 U.S. at 562.   Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must

allege "only enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to
> dismiss does not need detailed factual allegations, a plaintiff's
> obligation to provide the grounds of his entitlement to relief
> requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do.
> Factual allegations must be enough to raise a right to relief
> above the speculative level, on the assumption that all the
> allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme

Court provided further guidance, setting forth a two-pronged approach for courts deciding a

motion to dismiss.  First, a court should "begin by identifying pleadings that, because they are

no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 1950.  "While

legal conclusions can provide the framework of a complaint, they must be supported by

factual assumptions."  *Id.*  Thus, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."  *Id.* at 1949 (citing *Twombly*, 550

U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at

1950.  The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference
> that the defendant is liable for the misconduct alleged.  The
> plausibility standard is not akin to a "probability requirement,"
> but it asks for more than a sheer possibility that a defendant has
> acted unlawfully. Where a complaint pleads facts that are

"merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

## II.     Documents Properly Considered on the Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court generally may only consider facts stated in the complaint or "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007); *Gillingham v. Geico Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (same). A document not appended to the complaint may be considered if the document is "incorporated [in the complaint] by reference" or is a document "upon which [the complaint] *solely* relies and . . . is *integral to the complaint*." *Roth,* 489 F.3d at 509 (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991)) (emphasis in the original).   "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.,*  - - F.3d - - , 2010 WL 3911330, *6 (2d Cir. Oct. 7, 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)), *see also Cortec Indus.,* 949 F.2d at 47 ("when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] . . . which is integral to the complaint, the defendant may produce [it] when attacking the complaint for its failure to state a claim, because plaintiff should not be allowed to escape the consequences of its own failure").   "However, 'even if the document is "integral" to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.'"   *DiFolco*, 2010 WL 3911330,

*6 (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

As part of their motion to dismiss, Defendants have submitted via an attorney's declaration a document they contend is the employment agreement between the District and Plaintiff.  (*See* Ex. C to Cronin Decl.).  Said document is unsigned, undated, and has a number of blanks including Plaintiff's salary for the first (base) year of the contract. Plaintiff opposes consideration of this document arguing: "Exhibit C is replete with blank lines and is not signed by any party or dated.  Accordingly, Defendants base their arguments on a document that is not authenticated in any way.  The determination as to whether Exhibit C accurately represents the agreement contemplated by the parties cannot be made before discovery and without considering other evidence.  Such determination is not appropriate at the motion to dismiss stage so the Court should not consider Defendants' Exhibit C."  (Pl.'s Opp. Mem. at 4-5.)  Given that Plaintiff disputes the authenticity and accuracy of the submitted "contract" it is not appropriate for the Court to consider it on this motion to dismiss and hence Defendants' Ex. C shall be excluded.

Defendants also submitted a copy of the complaint in the defamation action commenced by Plaintiff against Salvatore.  Plaintiff does not dispute that said complaint can be considered and the Court finds that it may do so.

Finally, Plaintiff has submitted newspaper articles regarding the defamation action. The Court will consider the articles only as to the fact of publication.  *See In re MBIA, Inc. Securities Litigation*, 700 F. Supp. 2d 566, 576 (S.D.N.Y. 2010).

## III. Defendants' Contentions

Defendants seek dismissal of the complaint for failure to state a claim. More particularly, Defendants maintain that no claim has been stated against the District because of the absence of allegations of an official policy, custom or practice. With respect to the First Amendment retaliation claim Defendants assert that Plaintiff was not speaking as a citizen on a matter of public concern and there is a lack of a causal connection between his speech and the decision not to offer him a merit increase. The Due Process claim fails according to Defendants because of the lack of a property or liberty interest. Finally, Salvatore, Hornberger, and Hale asserted they are entitled to qualified immunity.

## IV. The District's Liability Under Monell

A municipality cannot be held liable under §1983 on a respondeat superior theory of liability for its employees' torts. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A municipal entity may only be liable if the alleged conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [its] officers" or a "governmental 'custom' even though such a custom has not received formal approval through official decision making channels." *Id.* at 690-91. Accordingly, in order to bring a § 1983 claim against a municipal defendant, a plaintiff must establish both a violation of his constitutional rights and that the violation was motivated by a municipal custom or policy. *Id.*; *see also Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 686 (2d Cir. 2005) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

The existence of a municipal policy or custom, may be plead in any of four ways.    A plaintiff may allege

> (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision-making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with municipal employees.

*Bonds v. Suffolk County Sheriff's Dept.*, 2006 U.S. Dist. Lexis 93607, at * 5 (E.D.N.Y. Dec. 5, 2006) (internal quotations and citations omitted).

Under New York law, the Board of Education has final policymaking authority for a school district.  N.Y. Educ. Law § 2507; *see Jamieson v. Poughkeepsie Sch. Dist.* 195 F. Supp. 2d 457, 474 (S.D.N.Y. 2002).  Here, Plaintiff asserts actions taken and/or decisions made by municipal officials with final-decision-making authority, viz. members of the Board of Education, which caused the alleged violation of his civil rights.  Accordingly, Defendants' argument that "[t]he question . . . is whether the plaintiff's complaint alleges that defendant Mineola Union Free School District has notice of but were deliberately indifferent to charges of misconduct by *lower level employees*" (Defs.'Mem in Supp. at 10 (emphasis added)), is seriously misplaced.

The motion to dismiss the claims against the District for failure to state a claim consistent with  *Monell* is denied.  *Monell* liability is, however, only part of the analysis of the District's liability.   As noted earlier, there must be a violation of a constitutional right.  It is to

that subject that the Court now turns.

## V. The First Amendment Retaliation Claim

In order to establish a First Amendment retaliation claim, an employee must prove that: "(1) [he] engaged in constitutionally protected speech . . . ; (2) [he] suffered an adverse employment action; and (3) the speech was a 'motivating factor' in the adverse employment decision." *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006), *overruled on other grounds, Appel v. Spiridon*, 531 F.3d 138, 139 (2d Cir. 2008). In determining whether a public employee engaged in constitutionally protected speech, a court must determine "whether the employee spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006). "If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id.* If the answer is yes, a court must then determine "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.; see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008).

The courts have recognized that while the First Amendment protects employees' speech in certain circumstances, it does not permit employees to "constitutionalize the employee grievance." *Garcetti*, 547 U.S. at 418. "Although a public employee 'does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment,' these rights are not absolute, because the public employer has a legitimate interest in regulating the speech of its employees to promote the efficiency of its public services." *Mandell v. County of Suffolk*, 316 F.3d 368, 382 (2d Cir. 2003) (citing *Connick v. Myers*, 461 U.S. 138, 140 (1983)); *see also Garcetti v. Ceballos,* 547 U.S. 410,

418 (2006) ("A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations."); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

"Recognizing that government employers (like private employers) 'have heightened interests in controlling speech made by an employee in his or her professional capacity,' the Supreme Court ruled that a public employee speaking in his official capacity is not speaking as a citizen for First Amendment purposes, and employer retaliation for such speech does not justify the 'displacement of managerial discretion by judicial supervision.'" *Ruotolo*, 514 F.3d at 189 (quoting *Garcetti*, 547 U.S. at 422). "When public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti,* 547 U.S. at 421; *see also Williams v. Dallas Ind. School Dist.*, 480 F.3d 689, 692 (5th Cir. 2007) ("Even if the speech is of great social importance, it is not protected by the First Amendment so long as it was made pursuant to the [public] worker's official duties.").

Thus, "in *Garcetti*, the Supreme Court clarified that the threshold question in First Amendment public speech cases is two-fold. First, in determining whether the speech in question is protected, the district court must decide whether the plaintiff was speaking "as a citizen. . . . Second, if the court determines that the plaintiff was speaking as a citizen, it must then conduct the analysis set forth in *Connick* [*v. Meyers*, 461 U.S. 138, 154 (1983)] and establish whether, 'viewing the record as a whole and based on the content, context, and form

of a given statement, the plaintiff's speech was made as a citizen upon matters of public concern.'" *Mulcahey v. Mulrenan*, 2008 WL 110949 (S.D.N.Y. 2008) (citations omitted), *aff'd*, 328 Fed. Appx. 8 (2d Cir. Mar. 31, 2009). *Accord Skehan*, 460 F.3d at 105-06 (if a public employee is not speaking pursuant to his official duties, the court must determine whether the speech relates to a matter of public concern, whether the employee suffers adverse employment action and whether the speech was a motivating factor in the employment action taken). Whether speech is protected is a question of law for the court, not a question of fact. *Connick*, 461 U.S. at 148 n.7.

The *Garcetti* Court did not "articulate a comprehensive framework" for determining whether an employee's speech is pursuant to his official duties, as opposed to as a citizen. The Court did note, however, that the test is a "practical one" and public employers "cannot restrict employees' rights by creating excessively broad descriptions." *Garcetti*, 547 U.S. at 424. "Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes. *Id.* at 424-25.

With respect to whether speech is on a matter of public concern, a court must "'tak[e] into account the content, form, and context of a given statement as revealed by the record as a whole.' . . . The heart of the matter is whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'" *Ruotolo*, 514 F.3d at 189 (quoting *Lewis v. Cowen*, 165 F.3d 154, 163-64 (2d Cir. 1999)).

The question of what is a matter of public concern is not

> amenable to a simple, definitive answer. Nonetheless, *Connick* provides some guidance. It directs courts to examine the "content, form, and context of a given statement, as revealed by the whole record' in assessing whether an employee's speech addresses a matter of public concern. . . . In addition it notes that the standard for determining whether expression is of public concern is the same standard used to determine whether a common-law action for invasion of privacy is present. . . . that standard is established by our decisions in *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 . . . and *Time Inc. v. Hill*, 385 U.S. 374, 387-88 . . . . These cases make clear that *public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication.*

*Piscottano v. Murphy*, 511 F.3d 247, 270 (2d Cir. 2007) (emphasis in original) (quoting *City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004) (citations omitted). Moreover, "retaliation against the airing of generally personal grievances is not brought within the protection of the First Amendment by 'the mere fact that one or two of [a public employee's] comments could be construed broadly to implicate matters of public concern.'" *Ruotolo,* 514 F.3d at 190 (brackets in original) (quoting *Ezekwo v. New York City Health & Hosp. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991)).

Recently, the Second Circuit reiterated that "[w]hether or not speech addresses a matter of public concern 'must be determined by the content, form and context of a given statement,' as revealed by the whole record . . . and while motive surely may be one factor in making this determination, it is not, standing alone, dispositive or conclusive." *Sousa v. Roque*, 578 F.3d 164, 175 (2d Cir. 2009).

With these principles in mind the Court shall proceed to examine Plaintiff's First Amendment claim.

The "speech" at issue in this case is Plaintiff's defamation action against a member of the District's board of education. Such speech was made by Plaintiff as a citizen, not an employee. Plaintiff did not take his concerns up the chain of command in his workplace (viz. to the Board of Education) but rather sought judicial redress. Where "a public employee takes his . . . concerns to persons outside the workplace . . . then those external communications are ordinarily not made as an employee, but as a citizen." *Williams,* 480 F.3d at 694. *Cf. Weintraub v. Bd. of Educ. of the City School Dist. of the City of New York*, 593 F.3d 196, 204-05 (2d Cir. 2010) (that teacher did not communicate with "public" about incident supported that he was speaking as an employee not a citizen). The Court is underwhelmed by Defendants' argument that Plaintiff was speaking in his official capacity "by bringing the defamatory evaluation to the attention of the public - the taxpayers that employ him." (Defs.' Mem. in Supp. at 13.) As Plaintiff aptly notes "accept[ance of] such a proposition would effectively foreclose all future First Amendment claims by public employees. Municipalities could simply argue that through the plaintiff's speech, the employee was advising his 'true employer,' the public, of municipal business and was therefore speaking pursuant to official dut[ies]." ( Pl.'s Opp. Mem. at 7.)

Having determined that Plaintiff's speech was as a citizen, the question becomes whether that speech was on a matter of "public concern." Bases on the allegations currently before it, the Court concludes, given its content, form, and context, that it was not.

Preliminarily, the Court rejects Plaintiff's claim that the existence of a number of newspaper articles on plaintiff's defamation lawsuit evidence that the speech was on a matter of public concern. Whether or not speech is on a matter of public concern for Constitutional

purposes cannot depend on the exercise of discretion by a newspaper editor whether to publish an article. *Cf. Ricioppo v. County of Suffolk*, 2009 WL 577727, *13 (E.D.N.Y. Mar. 4, 2009) ("That a trustee may have trespassed on someone else's duties and, in the process, exceeded his own authority, may be of some interest to some members of the public but that does not make it a matter of public concern for First Amendment purposes. "), *aff'd*, 353 Fed. Appx. 656, 2009 WL 4042877 (2d Cir. Nov. 24, 2009); *see also Ruotolo*, 514 F.3d 190.

Rather, the speech at issue is purely private in nature. The Second Circuit decisions in *Ezekwo v. N.Y. City Health & Hosp. Corp.*, 940 F.2d 775, 780-81 (2d Cir. 1999) and *Ruotolo* are instructive.

The *Ezekwo* plaintiff was an ophthalmology resident at a New York City Health and Hospitals Corporation hospital who commenced an action alleging, inter alia, that she was denied the position of chief resident because she exercised her First Amendment rights. She had authored a series of letters and memoranda to the director of the residency program relating to "(1) the failure of attending physicians and lecturers to be present at scheduled times, (2) the manner in which she was treated by [the program's director]; (3) the manner in which [the program director] evaluated her performance, (4) her lack of opportunity to perform surgery, (5) the lack of personal attention she received from attending physicians, (6) the lack of proper hospital maintenance, (7) [the program director's] poor management and motivational skills, and (8) the poor teaching methods of the attending physicians." *Id.* at 777-78. Although concerns about the competence or skill of a hospital administrator would presumably be of some interest to the public at large, the Second Circuit affirmed the district court's holding that the statements did not address matters of public concern. The Second

Circuit stated:

> Our review of her prolific writing convinces us that Ezekwo was not on a mission to protect the public welfare. Rather, her primary aim was to protect her own reputation and individual development as a doctor. As the *Connick* [*v. Myers*, 461 U.S. 138 (1982)] Court succinctly observed :
>
>> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark - and certainly every criticism directed at a public official would plant a seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.
>
> Id. at 149, 103 S. Ct. at 1691. The district court correctly reasoned that the mere fact that one or two of Ezekwo's comments could be construed broadly to implicate matters of public concern, does not alter the general nature of her statements. As the *Connick* Court emphasized:
>
>> We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. Our responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government; this does not require a grant of immunity for employees grievances not afforded by the First Amendment to those who do not work for the State.

940 F.2d at 781.

Here, as in *Ezekwo*, the speaker was not on a mission to protect the public welfare. Plaintiff was not seeking to inform the public that Salvatore was not discharging her responsibilities as a member of the Board of Education. Rather, it was simply a matter of commencing an action to recover for the alleged injury to Plaintiff's own reputation. As

such Plaintiff's speech was not on a matter of public concern. *See generally Hellstrom v. U.S.*
*Dep't of Veterans Affairs*, 46 Fed. Appx. 651, 655 (2d Cir. 2002) (Summary Order) (rejecting

argument that "comments on the performance and integrity of a highly visible public official

are unquestionably issues" of public concern; rather, content of speech must be viewed in

context to determine if it is of public concern); *Rafiy v. Nassau County Med. Ctr.*, 218 F.

Supp. 2d 295, 306-07 (E.D.N.Y. 2002) (observing that "where the speech uttered by the

employee relates simply to a disagreement or a criticism of the employer as boss, it is unlikely

the speech will be protected.").

In *Ruotolo*, the Second Circuit held that a lawsuit filed by a police officer in the wake

of retaliatory personnel action taken against him after he submitted a report concerning health

conditions at his precinct was not speech on a matter of public concern. In concluding that the

lawsuit was a personal grievance, the Circuit examined the complaint filed in the lawsuit at

issue:

> [T]he Complaint alleges that Ruotolo wrote the October 1999
> Report because he was assigned to do so as part of his job, and that
> the Report led to retaliatory acts affecting Ruotolo alone. The acts
> of alleged retaliation against Ruotolo bear upon the circumstances
> and perquisites of his employment, such as reassignment, transfer,
> time off, and discipline. The section of the Complaint titled
> "Consequences of the Retaliation" enumerates adverse career,
> financial and emotional effects that Ruotolo suffered personally.
> The relief sought is also almost entirely personal to Ruotolo,
> including compensatory damages and an injunction relating to
> Ruotolo's employment records.

514 F.3d at 189-90.

Here, Plaintiff's defamation action seeks recompense for the alleged injury to his

reputation and injunctive relief premised on the assertion that as a result of Salvatore's

defamatory statements he suffered "irreparable harm to his reputation." Which is to say that the relief sought was personal in nature.

Having determined that the facts alleged do not state a plausible claim for First Amendment retaliation,[1] Defendants' motion to dismiss said claim is granted.

## VI.     The Procedural Due Process Claim

The Due Process Clause imposes procedural safeguards on governmental decisions that deprive individuals of liberty or property interests, within the meaning of the Fifth or Fourteenth Amendments. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). To sustain such a claim, plaintiffs must show that (1) they possessed a property interest protected by the Constitution or federal statutes, and (2) they were deprived of that property interest without due process. *Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir.2002) (citing *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir.1995)).

The Constitution itself does not create property interests; rather they "'stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Ciambriello*, 292 F.3d at 313 (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). To state a claim under Section 1983, "plaintiff must have a property interest in a benefit that is 'more than an abstract need or

---

[1] Having concluded that Plaintiff's speech was not on a matter of public concern, the Court need not address whether a causal connection between his speech and the denial of the increase has been adequately alleged or whether said denial was an adverse employment action.

desire for it. [He] must instead have a legitimate claim of entitlement to it' under state or federal law." *Finley v. Giacobbe*, 79 F.3d 1285, 1296 (2d Cir.1996) (quoting *Roth*, 408 U.S. at 577).

According to the allegations in the complaint, Plaintiff had a contractual right to a merit increase in the event he met the goals established for him by the Board of Education and in fact he did meet the goals agreed upon by him and the Board. (*See* Compl. at ¶ 27.) Courts have held that employment contracts, more specifically collective bargaining agreements, *may* be the source of a property right entitled to due process. *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 260-61(1987) (plurality opinion) (employer's right to discharge an employee for cause pursuant to collective bargaining agreement is property interest protected by fifth amendment); *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991) (collective bargaining agreement providing that employee could not be fired without just cause creates property right under due process clause). Although an employment contract may create a property interest, the question here is whether the right asserted - a right to a merit increase - is a property right subject to due process protection.

The Second Circuit has limited the kinds of rights created by contract which are entitled to due process protection. In *S & D Maintenance Co., Inc. v. Goldin*, the Second Circuit explained its reasoning in so limiting the scope of due process protection:

> An interest in enforcement of an ordinary commercial contract with a state is qualitatively different from the interests the Supreme Court has thus far viewed as "property" entitled to procedural due process protection. *Goldberg v. Kelly*[, 397 U.S. 254 (1970),] involved entitlement to welfare benefits conferred by statute upon our poorest citizens to provide for their immediate well-being, if not survival. *Board of Regents v. Roth*, *supra*, and *Perry v.*

18

> *Sindermann*, [408 U.S. 593 (1972),] concerned claims to tenured status in public employment. In these contexts, the Due Process Clause is invoked to protect something more than an ordinary contractual right. Rather, procedural protection is sought in connection with a state's revocation of a status, an estate within the public sphere characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits.

844 F.2d 962, 966 (2d Cir.1988) (internal citations omitted); *see Martz v. Inc. Village of Valley Stream*, 22 F.3d 26, 30 (2d Cir.1994) ("[A]lthough a public contract can confer a protectable benefit, not every contract does so.") (internal citations omitted). More importantly, "the Second Circuit has declined to recognize a constitutionally protected property interest in a claim for an alleged contractual increase in benefits provided for in a collective bargaining agreement." *Henneberger v. County of Nassau,* 465 F. Supp. 2d 176, 192 (E.D.N.Y. 2006) (citing *Costello v. Town of Fairfield*, 811 F.2d 782 (1987)). In *Costello*, a group of retired police officers brought suit under Section 1983 alleging that their municipal employer had denied them certain pension benefit increases they were allegedly entitled to under a collective bargaining agreement. In dismissing the complaint, the court distinguished its earlier decision in *Basciano v. Herkimer*, 605 F.2d 605 (2d Cir.1978), where it had found a protected property interest in disability retirement benefits. According to the *Costello* court, the claim before it differed from that in *Basciano* because the Costello plaintiffs had not been denied the entirety of their retirement benefits. Rather, in *Costello*, plaintiffs had "been receiving their pensions and merely dispute the lack of an increase they claim is due them under the collective bargaining agreement." *Costello*, 811 F.2d at 784. The court found that "before undertaking to determine if there is an entitlement to an increase . . . there first should

be a resolution of the dispute concerning whether the claimed increase is due." *Id*. The *Costello* court determined that the due process claim essentially involved "the interpretation of a contract term" and, because a contract dispute "does not give rise to a cause of action under section 1983," found plaintiffs' interests in the increased benefit was not entitled to constitutional protection. *Id*.

"[N]ot every breach of a contractual right rises to the level of a deprivation of property." *Ezekwo*, 940 F.2d at 783. Here, as in *Costello*, plaintiff seeks due process protection for an interest created solely by contract and involves the interpretation of a contract term. *See Goldin*, 844 F.2d at 967. Plaintiff is "attempting to turn what is essentially a contract dispute into a federal constitutional claim." *Henneberger*, 465 F. Supp. 2d at 193. To paraphrase the *Henneberger* court:

> Plaintiff [has] not been denied the entirety of [his] salary, but only certain wage increases allegedly due to [him] under the [employment contract]; [he] do[es] not assert, and the Court can find no reasonable basis to conclude, that the denial of [this] increased benefit[] will result in extreme poverty . . . . Moreover, as in *Costello*, plaintiff[] in this case merely dispute the lack of an increase [he] claims is due . . . . The Court finds that the denial of additional benefits allegedly due to plaintiff[] . . .does not constitute the kind of deprivation that may give rise to a due process claim in the Second Circuit. Instead, on the issue of whether the complaint alleges a constitutionally protected property interest, the Court finds that plaintiff[] [is] attempting to turn what is essentially a contract dispute into a federal constitutional claim; this, of course, is impermissible.

465 F. Supp. 2d at 193 (internal quotations and citations omitted). *See also Krukenkamp v. State University of New York at Stony Brook*, 2010 WL 3894970, at *4 (2d. Cir. Oct. 6, 2010) (Summary Order); *Sparveri v. Town of Rocky Hill*, 396 F. Supp. 2d 214, 217-19 (D. Conn.

2005).

Finally, even assuming that plaintiff has a protectable property interest in the merit increase, the Court concludes that Plaintiff had adequate post deprivation remedies including a state law contract claim or an Article 78 proceeding. *See Krukenkamp*, 2010 WL 3894970, at *4 (concluding that "state breach of contract action or Article 78 claim" provided plaintiff with adequate post deprivation remedies for his breach of contract claim citing *Costello*, 811 F.2d at 784 ("A contract dispute ... does not give rise to a cause of action under Section 1983.") and *Grillo v. New York City Transit Auth.*, 291 F.3d 231, 234 (2d Cir.2002) (finding that "an Article 78 proceeding is a perfectly adequate postdeprivation remedy" for the arbitrary deprivation of a property or liberty interest (quotation marks omitted)).

## Conclusion

For the reasons set forth above, Defendants' motion to dismiss is granted. The Clerk of Court is directed to close this case.

Dated: Central Islip, New York
      December 1, 2010

                          /s/_____
                          Denis R. Hurley
                          Senior District Judge